**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| EQUIPMENTSHARE.COM INC,<br><br>Plaintiff,<br><br>v.<br><br>JANE AND JOHN DOES 1-10,<br><br>Defendants. | Case No. _______________<br><br>**JURY TRIAL DEMANDED** |

**<u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>**

Former employees of Plaintiff EquipmentShare.com Inc ("EquipmentShare" or the "Company") are reported to have disclosed, and in some instances potentially sold, the Company's confidential information and, upon information and belief, trade secrets to a short seller, in breach of those employees' nondisclosure agreements with the Company and in violation of applicable law. EquipmentShare alleges that this conduct remains an ongoing threat as the short seller and other third parties continue to solicit and pay former employees to make additional unauthorized disclosures. EquipmentShare brings this action to redress those unauthorized disclosures and prevent further trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*

Through undersigned counsel, EquipmentShare alleges the following based on its knowledge of its own acts and records, and on information and belief where specifically stated concerning others' conduct:

**NATURE OF THE ACTION**

1. EquipmentShare, a publicly traded company, competes in the construction equipment and construction technology industries on the strength of information its competitors do not have: its proprietary operational processes, nonpublic technology development and

implementation work, pricing methodologies, branch-level performance data, and internal financial records.

2. EquipmentShare entrusts that information to its employees so they can perform their jobs, and in exchange every employee agrees in writing, as a condition of employment, to hold EquipmentShare's confidential and trade secret information in strictest confidence, during employment and after it ends.

3. This action arises from reports that this trust has already been breached and to prevent the threat of further breaches.

4. On information and belief, Defendants are former EquipmentShare employees, including those formerly in management positions, who, as specifically alleged below, have disclosed confidential information in breach of their agreements with the Company and pose a real risk of future disclosure of EquipmentShare's trade secrets, which they obtained through their employment with EquipmentShare, to persons publishing under the name Umibōzu Research ("Umibōzu"), without EquipmentShare's authorization.

5. Umibōzu is a short seller that publishes negative "research" reports online for the purpose of causing holders of the publicly traded shares of the companies it targets to sell those shares, so that share prices decline and Umibōzu, its "Capital Provider," and its other financial backers profit from their short positions. Umibōzu has confirmed this self-interested motivation in its reports.

6. Umibōzu's "research" reports are not journalism. They are trading tools that Umibōzu and its financial backers use to manufacture a sudden wave of negative market sentiment about a target company as part of a sophisticated, self-interested trading strategy.

7. To give its reports a veneer of credibility, Umibōzu claims to recruit current and former employees of its target companies, sources it acknowledges "may be biased, financially interested, or hold grievances against the companies or persons discussed," and then uses the purported fruits of those interviews to dress up its false and inflammatory accusations as insider revelations  October 7, 2026 Report (the "October 2026 Report"), at 59, attached as **Exhibit B**.

8. Umibōzu published two such reports targeting EquipmentShare: one on June 24, 2026 (the "June 2026 Report," attached as **Exhibit A**) and one on October 7, 2026 (**Ex. B**, and together with the June 2026 Report, the "Reports").[1]

9. In the Reports, Umibōzu claims to have interviewed former EquipmentShare employees and to have obtained from them confidential information and, upon information and belief, trade secrets about EquipmentShare that they received during their employment and not from any publicly available source.

10. Umibōzu described these former EquipmentShare employees as having senior positions at the Company, making them privy to confidential information and trade secrets. The October 2026 Report also states that certain of the sources relied upon in the report, which include the former employees, were paid to speak with Umibōzu. **Ex. B** at 59.

11. On information and belief, each of the former employees who may have disclosed information to Umibōzu signed, as a condition of employment with EquipmentShare, a

[1] The Reports contain numerous false and misleading statements, inaccurate analysis, and unsupported conclusions regarding the business practices of EquipmentShare and its founders. However, these reports are not the basis of this suit which is focused on the unauthorized disclosures of Defendants to third parties, including Umibōzu, and Umibōzu readily admits that its reports do not accurately or completely describe the unauthorized disclosures it claims Defendants made to it.

Confidential Information, Invention Assignment and Non-Competition Agreement (each, an "Agreement"). A true and correct exemplar is attached as **Exhibit C.**

12. This Agreement requires employees, during their employment ***and thereafter***, to hold "Confidential Information" in strictest confidence and prohibits unauthorized use or disclosure. **Ex. C** ¶ 3(a).

13. On information and belief, each such former employee breached that Agreement's confidentiality obligations by disclosing EquipmentShare's Confidential Information to Umibōzu without EquipmentShare's authorization.

14. While the Reports do not contain accurate or complete descriptions of Defendants' disclosures, the categories of information Umibōzu claims to have discussed with Defendants establishes that Defendants disclosed EquipmentShare's confidential information without authorization, and those discussions also included, upon information and belief, trade secrets, constituting actual misappropriation.

15. The ongoing solicitation of former employees by Umibōzu and other third parties has created an imminent risk of further trade secret disclosure.

16. Both the completed, unlawful disclosures of trade secrets and the ongoing threatened misappropriation are actionable under the DTSA and remediable by injunction and damages. *See* 18 U.S.C. § 1836(b)(3)(A)(i).

17. The threat that Defendants will misappropriate EquipmentShare's trade secrets is real and ongoing.

18. Defendants, who were senior employees of EquipmentShare (and solicited by Umibōzu for that reason), were, during their employment, privy to the Company's confidential information and trade secrets.

19. Defendants were and continue to be solicited for their insider knowledge by Umibōzu, which has indicated it may publish additional reports about EquipmentShare, as well as other third parties potentially affiliated with Umibōzu through offers of payment and other means.

20. Umibōzu claims to have obtained EquipmentShare's confidential information and trade secrets during its interviews with former EquipmentShare employees and it is actively seeking more trade secrets and confidential information from former EquipmentShare employees.

21. The Defendants' conduct is an effort to harm EquipmentShare's business through the unauthorized dissemination of confidential information and trade secrets for improper purposes, including Defendants' own pecuniary gain.

22. EquipmentShare seeks damages caused by Defendants' contractual breach and preliminary and permanent injunctive relief to stop further unlawful disclosure or use of its trade secret and confidential information. Absent an injunction, EquipmentShare will suffer irreparable harm. [2]

23. EquipmentShare has not named Umibōzu as a defendant in this Complaint and reserves all rights against it.

**PARTIES AND DOE DESIGNATIONS**

24. Plaintiff EquipmentShare.com Inc ("EquipmentShare") is a Texas corporation with its principal executive offices at 5710 Bull Run Drive, Columbia, Missouri 65201.

---

[2] EquipmentShare does not seek by this action to reach, chill, or penalize any Defendant's exercise of rights protected under the federal securities laws, including any protected communication with or disclosure to the Securities and Exchange Commission under Section 21F of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.21F-17. Indeed, EquipmentShare's standard employment terms do not prevent employees from communicating with or participating in any government investigation. EquipmentShare challenges only the unauthorized disclosure of its trade secrets and Confidential Information to a commercial short seller, and not any activity protected under the federal securities or other applicable laws.

EquipmentShare is the owner of the trade secrets at issue and the party entitled to enforce the agreements described below.

25. Jane and John Does 1 through 10 ("Defendants") are presently unidentified former employees of EquipmentShare who, on information and belief, are reported to have disclosed EquipmentShare's confidential information to Umibōzu without authorization and in violation of their continuing duties of confidentiality, and who threaten to disclose EquipmentShare's trade secret and confidential information unless enjoined.

26. Defendants, as described in the Reports, include:

a. The former employees and insiders interviewed by Umibōzu for the June 2026 Report.

b. The former District Managers interviewed by Umibōzu for the October 2026 Report.

c. The former Regional Managers interviewed by Umibōzu for the October 2026 Report.

d. The former Branch Manager interviewed by Umibōzu for the October 2026 Report.

e. The former Operations Executives interviewed by Umibōzu for the October 2026 Report.

f. The former Finance Manager interviewed by Umibōzu for the October 2026 Report.

g. The former Accounting Manager interviewed by Umibōzu for the October 2026 Report.

27. The claims against Defendants arise from the same series of transactions or occurrences and present common questions concerning Defendants' breaches of their respective

Agreements through their unauthorized disclosure of EquipmentShare's Confidential Information. Each Defendant is sued for that Defendant's own acts.

## JURISDICTION AND VENUE

28. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because Count I arises under the DTSA.

29. The Court has supplemental jurisdiction over Count II under 28 U.S.C. § 1367(a). The contract claims arise from the same access to, and similar disclosure of, information as the DTSA claim and form part of the same case or controversy.

30. The Court has personal jurisdiction over Does 1 through 10 under Federal Rule of Civil Procedure 4(k)(1)(A).

31. The Court additionally has personal jurisdiction over each Defendant because each Defendant purposefully established minimum contacts with Missouri and this action arises out of those contacts.

32. Each Defendant was employed by EquipmentShare and, as a condition of that employment, entered into an agreement with EquipmentShare that is "governed, construed and interpreted in accordance with the laws of the State of Missouri." **Ex. C** ¶ 11(a).

33. A substantial portion of EquipmentShare's Confidential Information was created, compiled, and maintained in this District.

34. Each Defendant received EquipmentShare's confidential information and trade secret information through a Missouri based employment relationship, including information compiled, maintained, and distributed from EquipmentShare's Columbia headquarters.

35. At least one Defendant also attended confidential meetings at EquipmentShare's Columbia headquarters at which Confidential Information including potential trade secret information was discussed. **Ex. B** at 31.

36. The claims in this action thus arise directly out of each Defendant's Missouri centered employment relationship and the resulting contractual obligations, rendering the exercise of personal jurisdiction consistent with due process.

37. Venue is proper in the Western District of Missouri under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. EquipmentShare's Business

38. EquipmentShare is an equipment and digital solutions provider serving the construction industry in interstate commerce, providing builders, industrial facilities, construction crews, and contractors with reliable equipment and expert support.

39. EquipmentShare was founded in 2015 by Jabbok and William Schlacks, two brothers and contractors from Missouri, on a mission to disrupt the long stagnant American construction equipment industry. Unlike legacy construction rental companies that merely lease heavy machinery, EquipmentShare leases its machinery and integrates into the physical hardware its proprietary cloud based software, T3.

40. T3 serves various functions, including but not limited to fleet and asset tracking to prevent theft and loss as well as providing real time coaching to contractors to promote jobsite safety. It further captures billions of datapoints from construction sites each day to increase efficiency and productivity.

41. In the eleven years since EquipmentShare's founding, it has invested millions of dollars into developing its proprietary platforms and maintaining its nonpublic operating data and methodologies, successfully debuting as a public company in January 2026. EquipmentShare now operates more than 430 equipment rental, retail, and service locations across 45 states.

42. At the core of EquipmentShare's business are its proprietary technology and platform solutions, including its T3 fleet management platform, that give construction teams enhanced visibility into fleet assets and personnel, helping jobsites operate more safely and efficiently.

43. EquipmentShare's platforms also generate nonpublic operating data, including equipment utilization data that EquipmentShare does not publicly report. EquipmentShare built T3 and its internal operating tools in-house over ten years through the work of 300 engineers and data scientists and an investment of millions of dollars.

44. EquipmentShare continually invests in developing and implementing new technology, including products and features that are not yet public. That nonpublic development work is a significant component of EquipmentShare's competitive advantage, and it confers that advantage even before a product or feature is released.

45. EquipmentShare operates in the highly competitive equipment rental industry, in which it combines its technology development, internal systems and workflows, vendor and financing relationships, branch operations, internal financial data, pricing tools, and confidential customer and other business information to deliver market leading solutions that attract and retain business.

**B. The Umibōzu Reports**

46. On or about June 24, 2026, Umibōzu published the June 2026 Report, which disclosed Umibōzu's short position in EquipmentShare.

47. In that report, Umibōzu attributes statements to unnamed former EquipmentShare employees and insiders concerning allegedly nonpublic information about EquipmentShare's vendor, customer, and financing relationships, branch level operational performance data, internal financial data, business strategies, and other matters.

48. On or about October 7, 2026, Umibōzu published the October 2026 Report, which, in addition to disclosing Umibōzu's short position in EquipmentShare, disclosed that Umibōzu had an agreement with a Capital Provider, and potentially others, entitling it to share in trading profits in EquipmentShare securities.

49. Umibōzu conceded in the October 2026 Report that the arrangements with its trading partners "create material conflicts of interest and may give Umibōzu incentives that differ materially from, or are directly adverse to, your interests." **Ex. B** at 58.

50. In the October 2026 Report, Umibōzu cites purported interviews with former employees including unnamed former EquipmentShare District Managers, Regional Managers, a Branch Manager, Finance personnel, and Operations Executives on the above topics.

51. The October 2026 Report attributes to these former employees statements concerning alleged nonpublic information about EquipmentShare's branch performance, cost and revenue allocation, fleet and utilization data, internal financial reporting and systems, receivables, information regarding charged-off accounts, and collections efforts, and business plans and strategies, including EquipmentShare's then nonpublic development of an internal site-identification application.

52. By Umibōzu's own description, many of the former employees who provided information for the October 2026 Report "ran EQPT's branches and managed their P&Ls." **Ex. B** at 2.

53. Umibōzu further claims to have obtained from these former employees related business information that it did not disclose in the October 2026 Report and admits that certain of its sources were paid. *Id.* at 59.

54. Employees in the roles Umibōzu cites (District Manager, Regional Manager, Branch Manager, Operations Executive, Finance Manager, and Accounting Manager) had access, by virtue of those positions, to EquipmentShare's trade secret and confidential information, including nonpublic technology development and implementation work, such as planned products and features not yet released; restricted branch level profit and loss statements ("P&Ls"); fleet original equipment cost ("OEC") and allocation data; internal forecasting and reporting systems; pricing and vendor financing methodologies; customer relationships; and business strategies and methodologies.

55. EquipmentShare maintained this information on access restricted, monitored systems, and access was limited by role.

## C. Defendants' Confidentiality and Nonuse Covenants

56. From the outset of their employment, EquipmentShare entrusted Defendants with its confidential, proprietary, and trade secret information so that they could perform their duties.

57. EquipmentShare provided Defendants with access to its proprietary operational processes, pricing methodologies, branch level performance data, cost and margin information, internal financial records, and nonpublic technology development and implementation work, including site selection processes and planned products and features, which are the same categories of information Defendants later disclosed to Umibōzu, according to the Reports.

58. On information and belief, as a condition of employment with EquipmentShare, Defendants executed their respective Agreements.

59. In their respective Agreements, Defendants acknowledged that EquipmentShare would provide them with Confidential Information necessary to perform their duties. **Ex. C** ¶ 3(a).

60. The Agreement defines Confidential Information to include:

> [I]nformation and physical material not generally known or available outside the Company and information and physical material entrusted to the Company in confidence by third parties. Confidential Information includes, without limitation: (i) Company Inventions (as defined below); and (ii) technical data, trade secrets, know-how, research, product or service ideas or plans, . . . , processes, formulas, techniques, . . . , engineering designs and drawings, hardware configuration information, agreements with third parties, lists of, or information relating to, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to, suppliers and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), price lists, pricing methodologies, cost data, market share data, marketing plans, licenses, contract information, business plans, financial forecasts, historical financial data, budgets or other business information disclosed to me by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation.

**Ex**. **C** ¶ 3(b).

61. Defendants agreed to hold this Confidential Information "in strictest confidence," to use it only for EquipmentShare's benefit and only as necessary to perform their duties, and not to disclose or copy it without authorization. *Id.* ¶ 3(a).

62. The Agreement further required Defendants, upon termination of their employment, to execute the Termination Certification attached to their respective Agreements acknowledging that they remained bound by their restrictive covenants and would not use or share EquipmentShare's Confidential Information. **Ex. C** ¶ 6.

63. At each challenged and threatened disclosure, the particular covenant being enforced remained effective and covered the specific information disclosed.

64. The restrictions, as applied here, protect legitimate confidential information rather than prohibit ordinary competition.

65. Each Defendant knew of these obligations from the Agreement that Defendant signed, including the acknowledgment in Section 3(a) and the commitment to execute a Termination Certification reaffirming the continuing duty of confidentiality.

66. Umibōzu's own disclaimer recognizes the significance of such duties: it states Umibōzu's belief "that no material nonpublic information was received from any person under a duty of confidentiality." **Ex. B** at 59. Whatever Umibōzu believed, each Defendant was bound by a written and continuing duty of confidentiality when that Defendant disclosed EquipmentShare's Confidential Information to Umibōzu.

67. EquipmentShare did not expressly or impliedly authorize, and has not expressly or impliedly authorized, any Defendant to disclose to Umibōzu or its representatives the specific protected information identified in Section D. No Defendant obtained EquipmentShare's written authorization for the challenged disclosures.

## D. Defendants Breach Their Agreements with EquipmentShare by Disclosing Confidential Information to Umibōzu

68. Umibōzu has publicly stated that it obtained information about EquipmentShare through interviews with EquipmentShare's former employees, as described below.

69. EquipmentShare does not rely on, and in fact strongly disputes the accuracy of, Umibōzu's published content; which is not the basis of EquipmentShare's claims.

70. What matters is Umibōzu's admission that Defendants disclosed to it categories of nonpublic information during interviews that are confidential under the relevant Agreements.

71. On information and belief, those disclosures included EquipmentShare's trade secrets and the threat of continued misappropriation of EquipmentShare's trade secret and confidential information by Defendants is ongoing.

72. On information and belief, Defendants harbor biases and grievances against EquipmentShare arising from their former employment.

73. Defendants also have financial motivations to breach their contractual duties to EquipmentShare.

74. On information and belief, one or more Defendants were paid for the information they provided to Umibōzu.

75. To avoid compounding the harm, EquipmentShare identifies the information disclosed during the interviews by category and will identify its confidential information with further particularity under appropriate protective measures.

76. The June 2026 Report attributes various statements to "employees" and "insiders" that they made during interviews.

77. In those interviews, Umibōzu claims that Defendants discussed with Umibōzu internal information about EquipmentShare's business and operations, including personnel and human resources matters and internal legal matters.

78. On information and belief, at least some of those disclosures made by Defendants included EquipmentShare confidential information and trade secrets.

79. That information included information allegedly relating to EquipmentShare employees and potentially information protected by EquipmentShare's attorney-client privilege.

80. The October 2026 Report, in turn, claims that former District, Regional, Branch, Operations, and Finance personnel made disclosures regarding EquipmentShare's nonpublic: branch, location, and regional level financial performance, P&L, and forecasting information and related internal reporting systems, including confidential management discussions of branch strategy (**Ex. B** at 4, 16–17, 31–32); fleet operations and management information (**Ex. B** at 5, 8, 32, 36, 41–42); internal financial reporting systems and receivables, collections, and credit information (**Ex. B** at 38–40); and its then nonpublic development of an internal site-identification application and an associated employee incentive program (**Ex. B** at 47–48).

81. On information and belief, some of those disclosures made by Defendants during interviews with Umibōzu included EquipmentShare confidential information and trade secrets, including without limitation, branch, location, and regional level financial performance, P&L, and forecasting information and related internal reporting systems; fleet operations and utilization data; and the then nonpublic information concerning site identifications.

## E. EquipmentShare Faces the Real and Imminent Threat that Defendants Will Continue to Misappropriate Its Trade Secrets

82. EquipmentShare's trade secrets have been disclosed to Umibōzu and EquipmentShare faces a real risk of continued misappropriation of its trade secrets by Defendants.

83. Umibōzu admits that it interviewed senior former employees and discussed with them the very categories of information identified below.

84. On information and belief, Defendants' disclosures therefore included EquipmentShare's trade secrets and related confidential information. In any event, EquipmentShare need not wait to suffer further harm before bringing suit under the DTSA. *See* 18 U.S.C. § 1836(b)(3)(A)(i).

85. The confidential information and, upon information and belief, trade secrets disclosed by Defendants directly relate to how EquipmentShare conducts its cutting-edge construction equipment rental business.

86. On information and belief, these trade secrets are particularly valuable to Umibōzu and other short sellers, who profit when EquipmentShare's share price drops and therefore stand to gain from the competitive harm that disclosing those secrets would inflict. As detailed below, on information and belief, Umibōzu and others are willing to pay former employees for these trade secrets.

87. Indeed, Umibōzu targeted former employees who served in senior roles precisely to maximize the chance that they would disclose trade secrets. Per the October 2026 Report, Umibōzu "sought out formers that held these exact roles across numerous markets – the very people we learned EQPT tasks with branch financials." **Ex. B** at 16.

88. Specifically, trade secrets including but not limited to the following operational processes of the Company are subject to that threat of disclosure:

a. EquipmentShare's real time P&L forecasting and live reporting tools as well as non-public branch and company KPIs and forward-guidance;

b. EquipmentShare's fleet transfer system, CAPEX budgets and tracking, fleet purchasing strategy, type and timing of acquisitions, as well as resale and disposition strategies;

c. EquipmentShare's internal data tables, queries, and reporting rollups;

d. EquipmentShare's maintenance and reliability data, including but not limited to predictive-maintenance logic, downtime analytics, and asset-condition and status methodologies;

e. EquipmentShare's business plans and strategies relating to development of an internal site-identification application and associated employee incentive program; and

f. EquipmentShare's research, development, and engineering in the fields of robotics and automation, including autonomous construction platforms, hardware methods, and software.

89. EquipmentShare owns the trade secrets falling within these categories. Each trade secret subject to the threat of disclosure is a product of EquipmentShare's technology development and implementation work.

90. Disclosing these trade secrets would allow competitors to learn how EquipmentShare's internal systems function and what EquipmentShare is building next, without making EquipmentShare's investment.

91. Each trade secret derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by others who could profit from it. EquipmentShare developed the trade secrets over several years. A competitor with access to them would save years of development work and substantial cost, could benchmark its branches against EquipmentShare's, target the markets where EquipmentShare is strongest or weakest, and anticipate EquipmentShare's fleet and expansion decisions.

92. Umibōzu's own conduct confirms this value as it admits to having paid certain sources for the information. **Ex. B** at 59.

93. Each trade secret was developed or compiled by EquipmentShare for its business purposes, and EquipmentShare's rights existed before the conduct challenged in this action. None of the trade secrets appears in EquipmentShare's public filings or is otherwise publicly available.

94. EquipmentShare has also taken reasonable measures to keep such trade secrets protected from disclosure.

95. Those measures included requiring its employees, as a condition of employment, to execute written agreements obligating them to hold EquipmentShare's Confidential Information in strictest confidence during and after their employment; limiting access to confidential and proprietary information to those employees who needed it to perform their duties; maintaining

such information on EquipmentShare systems as to which employees had no expectation of privacy and which EquipmentShare reserved the right to monitor; and requiring departing employees to return all company property and records and to execute a Termination Certification reaffirming their continuing confidentiality obligations.

96. Indeed, each of these trade secrets also constitutes confidential information as defined in the Agreements.

97. Those measures largely worked.

98. Umibōzu itself reports that, throughout its purported investigation, it "found that employees were unable or unwilling to speak to us." **Ex. A** at 104-105.

99. Umibōzu likewise acknowledges that equipment utilization data was "guarded even internally" at EquipmentShare. **Ex. B** at 42.

100. Defendants ignored these measures when they disclosed the confidential information described above.

101. The threat of Defendants' misappropriation of these trade secrets is thus real and imminent, for at least the following reasons.

102. *First*, as alleged above, Defendants have knowledge of the Company's trade secrets. They held senior or supervisory positions at EquipmentShare, making them privy to the Company's trade secrets.

103. *Second*, Defendants are reportedly willing to disclose information that is competitively harmful to EquipmentShare as that is precisely what Umibōzu claims has already happened.

104. *Third,* Defendants have a motive to violate their contractual agreements with EquipmentShare. As Umibōzu warned its readers in the October 2026 Report, its sources could

"hold grievances against the companies or persons discussed" and that "you should weigh that possibility." **Ex. B** at 59. Indeed, at least one Defendant, a former District Manager, allegedly reached out to Umibōzu on their own initiative after the June 2026 Report. *Id.* at 16.

105. *Fourth*, Defendants have received and are very likely to continue receiving offers from Umibōzu and third-party short-seller affiliates to disclose and sell confidential and trade secret information that is competitively harmful to EquipmentShare.

106. Umibōzu relied on Defendants to breach the Agreements to provide confidential information.

107. What is more, some or all of Defendants might have been compensated for the information they provided.

108. Umibōzu openly stated in the October 2026 Report that it had paid certain sources for information.

109. Among the sources that Umibōzu relied on are the former EquipmentShare employees named as Defendants here.

110. The risk of further disclosures by Defendants of competitively harmful information is particularly high given Umibōzu's continued solicitation of Defendants in connection with its apparent intention to publish additional short seller reports.

111. Umibōzu stated in its October 2026 Report that "We're still analyzing material that didn't make this report, and we continue to dig for more." *Id.* at 50.

112. Further, on information and belief, third party entities affiliated with Umibōzu or potentially other short sellers are now soliciting other former senior employees over LinkedIn and other channels, and offering to compensate them, to be interviewed about EquipmentShare's nonpublic internal operations and strategic initiatives.

113. At least one former EquipmentShare employee has reported receiving repeated solicitations of this kind.

114. These solicitations seek the same categories of trade secret and confidential information that Defendants have already allegedly disclosed, and they confirm that further unauthorized disclosures of EquipmentShare's trade secret and confidential information by Defendants are threatened unless enjoined.

115. In sum, Defendants know the Company's trade secrets, are willing to disclose them, and are being actively solicited to do so for payment.

116. EquipmentShare has a real and genuine expectation that competitively useful trade secret information will be disclosed, including to EquipmentShare's direct competitors, and that disclosures of the same are not just threatened but in all probability will be committed.

117. To be clear, while Umibōzu's own admissions establish that Defendants disclosed EquipmentShare's confidential information and, on information and belief, its trade secrets, EquipmentShare does not yet know the full extent of the confidential information or trade secrets disclosed or every third party to whom Defendants disclosed such information.

118. EquipmentShare excludes from its trade secret claims information that is generally known or readily ascertainable through proper means at the time of the challenged disclosure, information independently developed by a Defendant without use of EquipmentShare's protected information, ordinary professional knowledge, and generalized opinions about management or accounting.

119. To the extent identifying a still secret item requires confidential detail, EquipmentShare will seek appropriate protection under 18 U.S.C. § 1835 and Rule 26(c).

## F. Injury and Protected Disclosures

120. As a direct and proximate result of Defendants' alleged unauthorized disclosures, EquipmentShare has been substantially harmed, including through the loss of the confidentiality of its information and the competitive advantage that confidentiality provides, and the costs of investigating and responding to the disclosures.

121. In addition, EquipmentShare has experienced a significant disruption to its business operations and has expended substantial resources to address it.

122. Further, the possibility of Defendants' misappropriation of trade secrets threatens to cause irreparable harm to EquipmentShare in the form of loss of confidentiality of its trade secrets and the competitive advantage that the confidentiality over such trade secrets provides.

123. EquipmentShare therefore seeks preliminary and permanent injunctive relief against each Defendant who presents a threat of misappropriation of specifically identified trade secret information, causing injury that money damages cannot adequately remedy. EquipmentShare will suffer irreparable harm absent an injunction.

124. No claim or requested relief encompasses disclosures immune under 18 U.S.C. § 1833(b), protected communications with government agencies or attorneys, legally protected whistleblowing, or other activity protected by applicable law. The disclosures at issue are not of that kind.

125. Each was made to a commercial short seller that publishes for profit and that, by its own disclosure, gives a trading partner advance notice of its reports in exchange for a share of that partner's trading profits.

## G. Identification of Defendants and Limited Discovery

126. EquipmentShare reasonably expects to identify the individual Defendants by comparing its own personnel, access, and systems records, including records showing which

current and former employees had access to the specific information described in Section D, with narrowly defined, nonprivileged records concerning the communications with Umibōzu.

127. The relevant potential records holders include Umibōzu and third parties through whom Umibōzu potentially engaged certain of the Defendants.

128. Defendants' identities cannot be determined from the Reports alone: Umibōzu states that it "removed identifying pieces of information from quotes and reduced the specificity of their titles" (**Ex. B** at 16) and that "identifying details have been omitted or altered" (*id.* at 59).

129. EquipmentShare will seek, by separate motion under Federal Rule of Civil Procedure 26(d)(1), leave to serve targeted, expedited discovery to identify and serve Defendants, including subpoenas to Umibōzu and the other third party entities described above.

130. Upon identifying each Defendant, EquipmentShare will amend this Complaint to substitute that Defendant's true name and will serve each Defendant in accordance with Federal Rules of Civil Procedure 4 and 15.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS**
**18 U.S.C. § 1836(b)**
**(Against Each Defendant for That Defendant's Own Conduct)**

131. EquipmentShare incorporates all preceding paragraphs as though fully set forth in this Count.

132. EquipmentShare is an owner as defined in 18 U.S.C. § 1839(4) of the trade secrets identified in Section E Each trade secret satisfies 18 U.S.C. § 1839(3).

133. The information had independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use, and was subject to the reasonable protective measures alleged above.

134. Each trade secret relates to a product or service used in, or intended for use in, interstate commerce, including EquipmentShare's equipment rental and technology products and services.

135. Umibōzu's admissions that it interviewed senior former employees and discussed with them the categories of information identified in Section E establish that Defendants disclosed EquipmentShare's confidential information and, on information and belief, its trade secrets, without authorization.

136. Those disclosures during the interviews constitute actual misappropriation by Defendants who, at the time of disclosure, knew or had reason to know that they had acquired the information under circumstances giving rise to a duty to maintain its secrecy or limit its use, within 18 U.S.C. § 1839(5)(B)(ii)(II).

137. Independently, the further disclosures threatened above, if they materialize, will constitute misappropriation on the same basis.

138. EquipmentShare does not rely on the accuracy of anything published in the Reports, which contain false and misleading information about the company.

139. Each Defendant's disclosure of EquipmentShare's trade secrets to Umibōzu during the interviews, together with that Defendant's continued possession of those trade secrets and the demonstrated and ongoing threat of their further disclosure or use alleged in Section E, constitutes actual and threatened misappropriation, for which EquipmentShare is entitled to injunctive relief under 18 U.S.C. § 1836(b)(3)(A)(i).

140. The threat of disclosure is demonstrated by Umibōzu's public claim that it paid former EquipmentShare employees for competitively harmful information, the ongoing third party solicitations for that information, and the senior positions held by the former employees with

whom Umibōzu claims to have spoken, which made those employees privy to EquipmentShare's trade secrets.

141. Taken together, these facts establish that Defendants have the knowledge, the motive, and the opportunity to disclose EquipmentShare's trade secrets.

142. The risk of Defendants' misappropriation of EquipmentShare's trade secrets threatens to cause irreparable harm, as alleged above.

143. EquipmentShare has no remedy at law to address the conduct complained of herein.

144. The equities and public interest tilt strongly in EquipmentShare's favor because without relief, the harm to EquipmentShare will be significant, and by contrast, the Defendants and the public would suffer little to no harm if the requested relief is granted.

145. To prevent harm to EquipmentShare, the Court should enjoin Defendants under 18 U.S.C. § 1836(b)(3)(A) from disclosing EquipmentShare's trade secrets, including by providing that information to Umibōzu or its representatives.

**COUNT II**
**BREACH OF CONTRACT**
**Confidentiality and Nonuse Covenants**
**(Against Each Defendant Under That Defendant's Agreement)**

146. EquipmentShare incorporates all preceding paragraphs as though fully set forth in this Count.

147. The applicable Agreement prohibits each Defendant from using EquipmentShare's Confidential Information except for EquipmentShare's benefit and only as necessary to perform that Defendant's duties.

148. Each Agreement further prohibits the respective Defendant from disclosing Confidential Information without EquipmentShare's written authorization. **Ex. C** ¶ 3(a).

149. EquipmentShare performed its obligations under each Agreement, including by employing each Defendant and providing the compensation and access to Confidential Information that the Agreement contemplates.

150. On information and belief, each Defendant disclosed Confidential Information to Umibōzu without EquipmentShare's authorization and in breach of that Defendant's Agreement.

151. Each breach was complete when the Defendant disclosed Confidential Information to Umibōzu.

152. Neither a Defendant's incomplete or slanted description of that information to Umibōzu or the fact that Umibōzu failed to accurately or completely describe what was disclosed to it in the Reports excuses the breach.

153. The Confidential Information at issue reportedly includes internal information about EquipmentShare's business and operations, including personnel and human resources matters and internal legal matters, potentially including information protected by EquipmentShare's attorney-client privilege.

154. The Confidential Information at issue also reportedly includes nonpublic branch, location, and regional level financial performance, P&L, and forecasting information and related internal reporting systems, including confidential management discussions of branch strategy; fleet operations and management information; internal financial reporting systems and receivables, collections, and credit information; and its then nonpublic development of an internal site identification application and an associated employee incentive program.

155. Each Defendant's unauthorized disclosure of information protected by that Defendant's Agreement constitutes a breach of that Agreement and the threatened further disclosure of information in violation of the applicable contracts threatens irreparable harm.

156. EquipmentShare has suffered damages as a direct and proximate result of Defendants' breaches, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, EquipmentShare respectfully requests that the Court enter judgment in its favor and against each Defendant, and award the following relief:

A. Preliminary and permanent injunctive relief under 18 U.S.C. § 1836(b)(3)(A) and Federal Rule of Civil Procedure 65 to prevent any actual or threatened misappropriation, enjoining each Defendant, and all persons acting in active concert or participation with that Defendant, from further disclosing or using EquipmentShare's trade secrets, including by providing that information to Umibōzu or its representatives;

B. Damages for Defendants' misappropriation of EquipmentShare's trade secrets under 18 U.S.C. § 1836(b)(3)(B);

C. Preliminary and permanent injunctive relief to prevent any threatened disclosure of confidential information, enjoining each Defendant from further breaching the confidentiality and nonuse covenants of the Agreements;

D. Damages caused by each Defendant's contractual breach;

E. An order requiring each Defendant to preserve all relevant evidence and to return to EquipmentShare all of its Confidential Information and other property in that Defendant's possession, custody, or control, as each Agreement requires (**Ex. C** ¶ 5), under a protocol that preserves forensic evidence;

F. Taxable costs and prejudgment and postjudgment interest to the extent authorized by law;

G. Attorneys' fees and costs as allowed under applicable law; and

H. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, EquipmentShare demands a jury trial on all issues so triable.

**DATED:** November 9, 2026

**Respectfully submitted,**


By: _*/s/ Karrie J. Clinkinbeard*_

**Karrie J. Clinkinbeard**
Mo. Bar No. 51413
kclinkinbeard@atllp.com
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 472-3175 (phone)
(816) 221-0786 (fax)

**Shawn Patrick Regan**
*Pro hac vice forthcoming*
shawn.regan@morganlewis.com
**Christopher M. Pardo**
*Pro hac vice forthcoming*
Christopher.pardo@morganlewis.com
101 Park Ave.
New York, NY 10178
(212) 309-6000 (phone)
(212) 309-6001 (fax)

**Torsten M. Kracht**
*pro hac vice forthcoming*
torsten.kracht@morganlewis.com
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
(202) 739-5346 (phone)
(202) 739-3001 (fax)

**Morgan A. McGreevy**
*pro hac vice forthcoming*
morgan.mcgreevy@morganlewis.com
1000 Louisiana St., Suite 4000
Houston, Texas 77002
(713) 890-5143 (phone)
(713) 890-5001 (fax)

***Counsel for EquipmentShare.com Inc.***